IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KEITH EDWARD PARKER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CASE NO. 1:20-CV-938-KFP |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff seeks review of the Social Security Administration's decision denying his application for disability insurance benefits. The undersigned, having considered the record, briefs, applicable regulations, and caselaw, AFFIRMS the decision of the Commissioner of Social Security.

**I.    STANDARD OF REVIEW**

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is more than a scintilla but less than a preponderance. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's factual findings, the Court must affirm if the

decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## II. FACTUAL BACKGROUND

Plaintiff filed his application for disability benefits in August 2018, alleging a disability onset of August 11, 2017, due to gout, bulging disc in his back, Achilles' tendonitis, and blood pressure. R. 149. Plaintiff, who has a twelfth-grade education and past relevant work experience as a maintenance inspector, was fifty years old at the alleged onset of disability and fifty-two years old at the time of the ALJ's decision. R. 20, 124, 150. The ALJ found that Plaintiff had the severe impairments of gout, obesity, and a back disorder but that he did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 16–17. He then found that Plaintiff has the following residual functional capacity:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could frequently use foot controls; frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; frequently balance; and occasionally stoop, kneel, crouch, and crawl. He can frequently reach overhead bilaterally.

R. 17. The ALJ also found Plaintiff could perform his past relevant work as a maintenance inspector and, based on the testimony of a vocational expert, could perform other work existing in significant numbers in the national economy, such as recreation aide, creel clerk, and marker. R. 20–21. Thus, the ALJ found Plaintiff was not disabled through the date of his decision. R. 29.

In reaching his decision, the ALJ discounted the opinion of James Nolin, a nurse practitioner, who performed a one-time consultative examination of Plaintiff on December

29, 2018. R. 258. At the evaluation, Plaintiff complained of gout, back pain, and Achilles tendonitis and reported that he could do housework and light yard work (with breaks), run errands, go grocery shopping, attend church, and drive a car. *Id*. He reported having gout for fifteen years, taking abortive treatments at the time, and having gout "flares 2-3 months depending on activity and stressors." R. 259.

Upon examination, Nolin found Plaintiff to be alert, oriented, well-developed, well-nourished, and in no distress. R. 259. Plaintiff's neck and back had no deformities or signs of trauma; the curvature of his spine was normal; his shoulders and hips were of equal height bilaterally; there was no evidence of muscle atrophy; his joints were stable with no evidence of problems; his posture was upright; his gait was smooth, steady, and normal; and his reflexes were normal. R. 260–61. His strength was rated as a four out of five in his legs, but his grip and arm strength were normal. He was unsteady when tandem walking and when walking on his heels and toes, and he could perform only a half squat; however, he had no issues getting on and off the examination table and had no need for an assistive device when walking. R. 261–62. *Id*. He had *some* decreased range of motion in the cervical spine, lumbar spine, and right shoulder,[1] but the range of motion in his left shoulder, elbows, wrists, hands, hips, knees, and ankles were normal. Based on this examination, Nolin opined that Plaintiff had the ability to work and do work-related activities as follows:

---

[1] With his cervical spine, Plaintiff's range of motion was 30/50 for forward flexion, 20/60 for extension, 35/45 for lateral flexion, 40/80 for right rotation, and 50/80 for left rotation. With his lumbar spine, his forward flexion was normal, his extension was 20/25, his lateral flexion was 15/25. With his right shoulder, forward elevation was 120/150, abduction was 130/150, adduction was 20/30, external rotation was 70/90, and internal rotation was 60/80. R. 262.

    1.       Stand for 5–10 minutes at a time for 3 hours per 8-hour day;

    2.       Walk for 5–10 minutes at a time for 3 hours per 8-hour day;

    3.       Sit for 30 minutes at time for 4 hours per 8-hour day;

    4.       Constantly perform finger manipulations, talk, and hear;

    5.       Frequently lift and carry 50 pounds, push and pull with his right and left arms and legs, balance, and reach overhead; and

    6.       Occasionally climb, stoop, kneel, crouch, and crawl.

R. 264–65. The ALJ found Nolin's opinion unpersuasive, stating as follows:

> The undersigned finds that the opinions of Mr. Nolin are not persuasive or consistent with itself or the medical evidence of record. Specifically, there is no reasonable explanation with the limitations in sitting, standing and walking noted here. The claimant has no recent treatment for anything that would support those limitations on a daily basis. Finally, the work restrictions are not supported by the claimant's minimal examination findings noted by Mr. Nolin. The opinion is not persuasive.

R. 19. On appeal, Plaintiff argues that reversal is warranted because the ALJ's rationale for disregarding Nolin's opinion is not consistent with the evidence of record. Doc. 16 at 4.

## III.    DISCUSSION

Plaintiff asserts the ALJ should have found Nolin's opinion persuasive because it is both supportable and consistent.[2] Specifically, he argues that Nolin's opinion and his

---

[2] The parties do not dispute that the new regulations enacted in March 2017 apply to this case. Accordingly, 20 C.F.R. § 416.920c, which explains how medical opinions and prior administrative medical findings are considered, states that specific evidentiary weight will not be given to a medical opinion and that the opinion's persuasiveness will be considered using the factors of supportability, consistency, relationship with claimant, specialization, and other factors, with supportability and consistency being most important. *See* 20 C.F.R. § 416.920c(a) and (c).

limitations are consistent with Nolin's medical examination, Plaintiff's longitudinal medical records, and Plaintiff's daily activities. *Id*. at 4–7.

With respect to Nolin's examination, Plaintiff points to the findings that he had decreased strength in his bilateral lower extremities; had an unsteady gait when tandem walking and walking on heels and toes; could only perform a half squat; and had decreased range of motion in his cervical spine, lumbar spine, right shoulder, and bilateral hands. Doc. 16 at 4. According to Plaintiff, the ALJ "selectively omitted" these findings in rejecting the limitations in Nolin's opinion. *Id*.

Plaintiff also points to additional treatment visits for gout not specifically referenced in the ALJ's decision. Doc. 16 at 4. The ALJ discussed three gout flareups on April 7, 2017, July 10, 2019, and September 24, 2019 (R. 18–19, 238–39, 291, 316), but Plaintiff notes that he was also treated in 2018[3] and three additional times in 2019.[4] He further explains that he received an injection on July 10, 2019, but had to return on July 19 because the injection provided only two days' relief. Doc. 16 at 5. At that visit, he was ambulating on crutches and unable to bear weight on the left foot. *Id*. (citing R. 310). According to Plaintiff, he has gout flareups two or three times per month. *Id*. (citing R. 35, 38). When asked by the ALJ why his medical records do not reflect this, Plaintiff testified that he tries

---

[3] Plaintiff was treated by Dr. Nasser Samuy on May 1 (R. 224–25) and October 9, 2018 (R. 282–283). Plaintiff references a third treatment by Dr. Samuy on April 4, 2018, but the purpose of the visit was to obtain medical clearance for a tooth extraction (R. 226–27), and there is no mention of gout in these medical records. Plaintiff reported pain with tingling in both feet, and, even though Dr. Samuy had treated Plaintiff for gout a year earlier (R. 238), he noted that the foot pain was "likely neuropathic" (R. 227). There is no indication that Plaintiff was treated for gout at this visit.
[4] In addition to the July 10 and September 24 visits, Plaintiff was treated on February 15, July 19, and September 3, 2019. R. 303–04, 308, 310. All of Plaintiff's gout flareups were treated by Dr. Samuy except on July 10, 2019 (with the follow-up on July 19) and September 24, 2019, when he saw Jessica Poitevint, a nurse practitioner.

to tough it out at home by elevating his feet; he uses crutches just to go to the bathroom; the flareups last an average of two days; and he does not go to the hospital because he cannot afford a $1500 shot every time he has a flareup. *Id*. at 6 (citing R. 36–45).

With respect to Plaintiff's daily living activities, the ALJ noted that Plaintiff drives a car, mows the grass with a riding mower, cooks, completes light household chores, watches television, washes dishes and clothes, pays bills, and watches his grandchildren. R. 18. Plaintiff argues there is no indication of the frequency and duration of these activities, and he points to Plaintiff's hearing testimony, where he testified that it takes him "most of the day" to do dishes or laundry because he has to "sit down a lot" due to "unbearable pain." Doc. 16 at 7 (citing R. 173, 180). He further testified that an hour is a long time for him to do a chore without taking a break, that he has to elevate his feet after an hour, and that he has to sit down for an hour or hour-and-a-half before he can do more. *Id*. (citing R. 41–42, 46–47).

Despite the fact that Plaintiff can identify some findings from Nolin's examination, other medical records, and evidence of daily living that are consistent with Nolin's restrictions, this consistency does not warrant remand. As mentioned above, the Court's role is to determine whether substantial evidence supports the Commissioner's decision. *Winschel*, 631 F.3d at 1178; *Bloodsworth*, 703 F.2d at 1239. Thus, Plaintiff must do more than identify evidence that supports his position; he must show the *absence* of substantial evidence supporting the ALJ's conclusion. *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (emphasis added). If substantial evidence supports the ALJ's conclusion, the Court must affirm, even if the evidence preponderates against it. *Winschel*,

631 F.3d at 1178; *Bloodsworth*, 703 F.2d at 1239. Here, the Court finds that substantial evidence supports the ALJ's decision.

First, Nolin's examination findings, viewed as a whole, were normal or mild. Plaintiff was in no distress, and his neck, back, spine, shoulders, hips, muscles, joints, posture, gait, and reflexes were normal. R. 260–61. Plaintiff claims certain findings were "selectively omitted," but an ALJ is not required to address the entirety of a medical source's opinion in his decision. *See Morris v. Kijakazi, Comm'r of Soc. Sec.*, No. CV 21-0027-MU, 2022 WL 2080312, at *4 (S.D. Ala. June 9, 2022) (citing 20 C.F.R. §§ 404.1520c(b)(1) and 416.920c(b)(1) (stating that an ALJ is not required to articulate how he considered each medical opinion or prior administrative medical finding from one medical source individually) and *Poole v. Kijakazi*, 2022 WL 1651196, at *2 (M.D. Ala. May 24, 2022) (in considering whether a medical source's opinion is supported by the source's own records and consistent with the other evidence of record, "an ALJ need only explain the consideration of the factors on a source-by-source basis; the regulations do not require the ALJ to precisely explain the consideration of each opinion within the same source")).

Additionally, Nolin's findings that were omitted by the ALJ were unremarkable. For instance, Plaintiff's decreased leg strength was still rated a four out of five. Although he was unsteady when tandem walking or walking on his toes or heels, he had no problems getting on and off the examination table and needed no assistive device to walk. The decreased range of motion in his neck, back, and right shoulder was not severe, and his range of motion was otherwise normal. Thus, it is not readily apparent—and neither

Plaintiff nor Nolin has explained—how these findings prevent Plaintiff from sitting more than four hours and standing or walking more than three. As a result, the Court finds no error in the ALJ's determination that Nolin's opinion is not supported by or consistent with the remainder of his examination findings.

As for Plaintiff's longitudinal medical records and his argument that the ALJ failed to mention certain gout flareups, an ALJ is not required to discuss every piece of evidence as long as the reviewing court can surmise that the ALJ considered the plaintiff's medical condition as a whole. *Dyer v. Barnart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Here, the ALJ specifically discussed two flareups in 2019 and none in 2018, but he later stated, "The claimant had four flare-ups this year [2019] and only two in 2018."[5] Therefore, it is clear that the ALJ was aware of the additional flareups described in Plaintiff's brief, and the Court is satisfied that the ALJ considered Plaintiff's medical condition as a whole.

Further, as the ALJ discussed, Plaintiff saw Dr. Samuy for gout in April 2017, and two weeks later at a follow-up visit Dr. Samuy noted that his gout had improved. R. 237. Plaintiff's medical records for visits in June, July, and December 2017 make no mention of gout. R. 230–35. Plaintiff had gout flareups in May and October 2018, but there was no mention of gout when Plaintiff saw Dr. Samuy in December 2018. R. 277. That same month, when he was evaluated by Nolin, he had a normal gait, no problems getting on and off the exam table, and no need for an assistive device when walking.

---

[5] Plaintiff argues there were three flareups in 2018, but, as mentioned above, the medical records for April 2018, when he sought clearance for a tooth extraction, do not mention gout or indicate that he was treated for gout. For 2019, there are five treatment dates, but the July 19 visit was a follow-up visit when the injection on July 10 provided only temporary relief.

In 2019, Plaintiff was treated for gout on February 15, July 10 and 19, and September 3, and 24. He received injections throughout his treatment from 2017 through 2019, and the only time he reported the injection not working was July 19, 2019, after receiving an injection on July 10. Additionally, despite his testimony that he is in constant pain, only goes to the doctor when the pain cannot be managed at home, and uses crutches at home just to go to the bathroom, the medical records contain no reports that his gout was constant, ongoing, and unresponsive to treatment, and the July 19 visit is the only time he was observed using crutches. Finally, as the ALJ noted, Plaintiff's medical providers never opined that he was disabled and never recommended any work restrictions. R. 19. Thus, Plaintiff's medical records as a whole show a favorable response to treatment and do not support his claim of weekly or monthly gout flareups. As a result, the Court finds that the ALJ did not err in finding that Nolin's opinion is not supported by or consistent with Plaintiff's longitudinal medical records.

Though not addressed by Plaintiff, the ALJ's decision is also supported by the opinion of Howard Harper, M.D., who completed a disability determination explanation in January 2019. R. 55–62. After reviewing Plaintiff's medical records, Dr. Harper found Plaintiff not disabled. R. 62. He found Plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently; climb ramps and stairs frequently; climb ladders, ropes, and scaffolds occasionally; reach overhead frequently; balance frequently; crawl, kneel, and stoop occasionally; and stand, walk, and sit with normal breaks for six hours in an eight-hour workday. *Id*. at 59–60. Harper found Plaintiff to have no limitations in gross or fine manipulation and that he was limited to light work but not limited to unskilled work.

9

*Id*. at 61. The ALJ found Dr. Harper's opinions persuasive because they were consistent with the medical evidence of record and because Dr. Harper has "program knowledge," noting that his opinions were consistent with Plaintiff's minimal examination findings and supported by reasonable references to the record medical evidence. R. 19.

Having reviewed the record as a whole, the Court finds that Nolin's examination findings, which were mild or unremarkable and devoid of any explanation of the limitations on sitting, standing, and walking, in addition to Plaintiff's longitudinal medical records and the opinion evidence of Dr. Harper, constitute substantial evidence supporting the ALJ's decision.

As for Plaintiff's daily activities, the ALJ's opinion indicates that he considered Plaintiff's ability to drive a car, mow the grass with a riding mower, cook his meals, perform light household chores, wash dishes and clothes, and watch his grandchildren, but he did so while also considering Plaintiff's medical records and the opinion evidence in crafting Plaintiff's RFC. R. 17. There is no indication the ALJ relied on Plaintiff's daily activities in rejecting Nolin's limitations on standing, walking, and sitting. That determination was based on Nolin's examination findings and Plaintiff's other medical records. Nevertheless, a showing that Plaintiff's daily activities are consistent with Nolin's restrictions does not satisfy his burden of showing the absence of substantial evidence supporting the ALJ's decision.[6] *See Sims*, 706 F. App'x at 604. Therefore, it does not matter

---

[6] Plaintiff devotes one sentence, without further analysis of the ALJ's decision, to a suggestion that the ALJ did not adequately articulate grounds for rejecting Nolin's opinion. He then cites to *B.M. v. Comm'r of Soc. Sec.*, No. 1:19-CV-57 (TQL), 2020 WL 5270019 (M.D. Ga. Sept. 4, 2020) and *Works v. Saul*, No. 4:19-CV-01515-MHH, 2021 WL 690126 (N.D. Ala. Feb. 23, 2021) for the proposition that the ALJ must articulate grounds for finding an opinion not persuasive and address both consistency and supportability.

if a different result could have been reached based on the record, as the Court cannot decide facts anew, reweigh evidence, or substitute its judgment for the ALJ's. *Winschel*, 631 F.3d at 1178.

## IV.   CONCLUSION

For the reasons set forth above, it is ORDERED as follows:

1. The Commissioner's decision is AFFIRMED.

2. A final judgment will be entered separately.

DONE this 21st day of June, 2022.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE

---

Plaintiff's cursory reference does not dictate a different result. Both of the cited cases are distinguishable. In *B.M.*, the ALJ stated that the medical opinions were "not far from the light residual functional capacity assessment and are persuasive, though time has passed and the more complete record gives [Plaintiff] slight additional limitations." The court found this analysis to be inadequate because it did not discuss supportability and consistency. *Id*. at *3 (citing *Pierson v. Comm'r of Soc. Sec.*, 2020 WL 1957597, at *6 (M.D. Fla. Apr. 8, 2020) (finding ALJ's statements that "there is no support on record for Dr. Perdomo's limited residual functional capacity" and "[t]he claimant's daily activities also contradict Dr. Perdomo's opinion" did not meet requirements of new regulations because ALJ did not link specific records to the opinion or specify how or which activities contradicted the opinion)). Similarly in *Works*, the ALJ stated that the medical opinion was "somewhat consistent with the entire medical record," and the court found that the ALJ did not satisfy his obligation to explain how he considered the supportability and consistency. *Works*, 2021 WL 690126, at *15. Here, the ALJ stated that Nolin's opinion was not consistent with itself or the medical evidence of record. He explained that the opinion contained no reasonable explanation for the limitations on sitting, standing, and walking. He pointed to the absence of treatment for any condition that would support Nolin's limitations on a daily basis and explained that they were not supported by Nolin's minimal examination findings. Thus, the ALJ satisfied his obligation to discuss the consistency and supportability of the opinion.